## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## TRENTON VICINAGE

| | | |
|---|---|---|
| **AYMAN KHOURSHED**<br>    and<br>**DR. SALLY ALKAMARY,** | : | **CIVIL ACTION** |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| **OLD BRIDGE TOWNSHIP;**<br>**DETECTIVE WILLIAM DUGAN;**<br>**SERGEANT JAMES FORD;**<br>**CHIEF OF POLICE DONALD**<br>**FRITZ, JR;**<br>**JOHN DOES 1-5**, | : | **Civil Action No.:** |
| (fictitious individuals representing<br>currently unidentified members of the<br>Old Bridge Township Police<br>Department or other law enforcement<br>agencies, in their official and individual<br>capacities);<br>**JOHN DOES 6-10**,<br>(fictitious individuals representing<br>currently unidentified individuals<br>serving in supervisory roles in the<br>Old Bridge Police Department or other<br>law enforcement agencies in their<br>official capacities only), | : | **3:23-cv-20977** |
| Defendants. | : | |

## COMPLAINT AND JURY DEMAND

1

Plaintiffs, Ayman Khourshed ("Khourshed") and Dr. Sally Alkamary ("Dr. Alkamary"), husband and wife residing at 10 Overhill Drive, Old Bridge, New Jersey, aver the following as their Complaint against the defendants named above.

## JURISDICTION AND VENUE

1. This is a Civil Rights action for money damages brought pursuant to 42 U.S.C. §§ 1983-1988; the Fourth and Fourteenth Amendments to the United States Constitution; and the Constitution of the State of New Jersey. Jurisdiction is appropriately conferred under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3). The Court has supplemental jurisdiction over Plaintiff's State law claims pursuant to 28 U.S.C. § 1367.

2. Venue of this action is proper in the District of New Jersey, Trenton Vicinage pursuant to 28 U.S.C. § 1391(b). The plaintiffs and defendants reside in his District and Vicinage, and a substantial part of the events giving rise to the plaintiffs' claims occurred in the same District and Vicinage.

## PARTIES

3. Plaintiff Khourshed, at all times relevant, was a resident of Old Bridge Township, residing at 10 Overhill Drive and married to Plaintiff Dr. Alkamary.

4. Plaintiff Dr. Alkamary, at all times relevant, was a resident of Old Bridge Township, residing at 10 Overhill Drive and married to Plaintiff Khourshed.

5. Defendant Old Bridge Township ("Old Bridge") is a duly designated

2

municipality of the State of New Jersey with offices located at 1 Old Bridge Plaza, Old Bridge, New Jersey 08857.  At all times relevant to this Complaint, Old Bridge:  (i) was the employer of Detective Dugan, (ii) was the employer of Sergeant Ford, (iii) was the employer of Chief Fritz, Jr.; (iv) was the employer of John Does 1-10; and (v) operated the Old Bridge Township Police Department (the "Police Department").

6.  Defendants Detective William Dugan ("Dugan"), Sergeant James Ford ("Ford") and/or John Does 1-5 were, at all times relevant to this Complaint, a duly appointed and acting officer of the Police Department, acting in such capacity as the agent, servant and/or employee of Old Bridge and were acting under the color of state law.  This Complaint is brought against Dugan, Ford and John Does 1-5 in their individual and official capacities as employees of Old Bridge.

7.  Defendants Ford and Chief of Police Donald Fritz, Jr. ("Chief Fritz, Jr.") and/or John Does 6-10 were acting in supervisory capacities over the agents, servants and/or employees of Old Bridge identified above in Paragraph 5, and were themselves acting in such capacity as the agent, servant and/or employee of Old Bridge and were acting under the color of state law.

8.  Chief Fritz, Jr. was at all times relevant to this Complaint a duly appointed and acting officer employed by Old Bridge and was vested by state law with the authority to make policy on, including but not limited to:  (i) police citizen

encounters; (ii) discouragement and consequences of the use of exaggerated and false reports and testimony of police officers; (iii) discouragement and consequences of the use of the criminal justice system in a malicious manner against citizens; and (iv) disciplining officers.

9. Defendants Dugan, Ford, and Fritz, Jr., work and may be served with process at their place of employment, Old Bridge Police Department, with offices located at 1 Old Bridge Plaza, Old Bridge, New Jersey 08857.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

10. On or about early 2017, Khourshed and Dr. Alkamary permitted Dr. Alkamary's sister (Soha) and her daughter (S.W.) to reside at their address in Old Bridge.

11. Upon information and belief, Soha had temporary custody of S.W. via an order from North Carolina.

12. From the beginning of the living arrangement, police officers employed by Old Bridge, including Dugan and Ford, were aware that Soha and S.W. were residing with Plaintiffs due to them performing numerous welfare visits to their residence.

13. S.W.'s father is named Momen Waly ("Waly").

14. Upon information and belief, in June of 2019, Waly obtained an order in North Carolina awarding him with primary custody of S.W.

15. After returning S.W. to Waly, Soha returned to New Jersey to live with Plaintiffs and Waly moved with S.W. to Tampa, Florida.

16. In March of 2020, Soha went to Florida to spend a week with S.W. for her scheduled visitation.

17. Plaintiffs were told that Soha and Waly agreed that S.W. could travel with Soha to New Jersey and that S.W. could remain in New Jersey due to concerns with COVID-19.

18. Officers employed by Old Bridge, including Dugan and Ford, were aware of this living arrangement due to welfare checks performed on March 29, 2020 and August 15, 2020.

19. On April 26, 2021, Waly was in New Jersey and contacted the Old Bridge Police Department to make contact with his daughter and retrieve her.

20. On or about April 26, 2021 at 6:15 PM, Officer Desario of the Old Bridge Police Department responded to Plaintiffs' residence.

21. On that date, Khourshed was home and spoke with Officer Desario. Desario indicated that he was there for a custody dispute. While Khourshed indicated that he would prefer to not get involved, on that date, Khourshed attempted to assist Desario by attempting to contact Soha and provided the officer with the make and model of her vehicle.

22. Plaintiffs then communicated to Soha that the police were attempting to

contact her which resulted in Soha contacting police on April 27, 2021.

23. On April 27, 2021, Officer Demaio of the Old Bridge Police Department responded to the Plaintiffs' residence.  On that date, Soha indicated to Demaio that she had a pending appeal in Middlesex County Superior Court to dispute the custody of S.W.  Demaio explained to Soha that she would be charged with contempt if she did not relinquish custody of S.W. and Soha agreed to cooperate.

24. After agreeing to relinquish custody of S.W., officers were unable to contact Waly via cellular telephone and he never came to the residence to pick up S.W.

25. Both the April 26, 2021 and April 27, 2021 incidents clearly demonstrating that the Plaintiffs were cooperating with law enforcement were omitted from Dugan's kidnapping investigation report and his grand jury testimony.

26. About three months later, in late July 2021, Old Bridge Police Department began surveilling the Plaintiffs' residence.  The surveillance indicated that neither Soha, nor S.W. were living at 10 Overhill Drive through August of 2021.

27. On September 9, 2021, Dugan and Detective Spinola responded to 10 Overhill Dr. for an alleged welfare check for S.W.

28. On that date, Khourshed was home and Dr. Alkamary was not at the

6

residence.

29. Khourshed spoke with Dugan and Detective Spinola for approximately 20 minutes and provided all information that he knew at the time. Specifically, that Soha and S.W. left the residence a while ago and that he did not know where they were. Khourshed also called Dr. Alkamary and put her on speakerphone. Dr. Alkamary provided information to Dugan and Detective Spinola over the telephone. At no point in time during the conversation did Dr. Alkamary indicate that she knew where Soha and S.W. were located, because she did not.

30. Dugan wrote a report containing several misrepresentations of the interaction with the Plaintiffs on September 9, 2021.

   a. He wrote that Khourshed was "visibly evasive" due to the fact that he did not know where Soha and S.W. were.

   b. He wrote that Plaintiffs "claim to know where S.W. is but will not advise." At no point did either Plaintiff indicate that they knew where S.W. was located.

   c. He wrote that "Sally yelled repeatedly at us." This is not true.

31. At the conclusion of the interaction on September 9, 2021, Dugan and Spinola advised the Plaintiffs that the Middlesex County Prosecutor's Office was already involved and that they were under criminal investigation.

32. After revealing this information, Dr. Alkamary advised that an attorney

7

would contact them with respect to alternative arrangements to confirm Sophia's welfare, and Khourshed indicated that he would not like to answer any further questions.

33. On September 28, 2021, Ford went to the Plaintiffs' residence.

34. Given that Khourshed was advised that there was a criminal investigation pending against him, Khourshed declined to speak to officer Ford and open the door to the residence without a search warrant. After appropriately exercising his Constitutional rights, Ford called Khourshed a "Mother Fu**er" and was visibly upset.

35. Concerned for his safety, Khourshed called 911 and informed the dispatcher that he felt he was being harassed and then spoke to a currently unidentified superior officer.

36. Ford was made aware of the complaint made by Khourshed.

37. On October 6, 2023, Dugan signed Complaint-Warrant 1209-W-2021-000355 against Khourshed and Complaint-Warrant 1209-W-2021-00034 against Dr. Alkamary charging them with Conspiracy to Commit Kidnapping (First Degree Felony); Conspiracy to Interfere with Custody (Second Degree Felony) and Hindering Apprehension (Third Degree Felony).

38. There was no probable cause to file these charges against Plaintiffs as

demonstrated by the false information and irrelevant facts contained in the narrative section of the Complaints.

    (a) The alleged crimes committed by Khourshed are alleged to have taken place on September 7, 2023.  Khourshed did not have any interaction with police on this date.

    (b) Dugan's narratives indicate that Khourshed and Dr. Alkamary "agreed with Soha Alkamary that [they] would aid her in the planning or commission of

    [FIRST DEGREE kidnapping] by . . ."

        1.  Allowing their family members (sister/sister-in-law and niece) to live at their residence.

        2.  Allowing their family member to keep her vehicle at the residence, and

        3.  Retaining their family member a criminal defense attorney when it appeared she was under investigation.

    (c)  Dugan's narrative indicates that Plaintiffs provided false information to law enforcement regarding the whereabouts of Soha and S.W. when Plaintiffs cooperated with Dugan on September 9, 2023 and gave them all of the information they

9

knew at the time until it was revealed they were under criminal investigation.

39.    On October 6, 2021, Khourshed was falsely arrested at his residence by Ford based on a warrant obtained through the false information provided by Dugan to a judicial officer in an effort to create probable cause where there was none.

40.    While Khourshed was handcuffed, Ford stated, "I told you I was going to arrest you."

41.    As a part of a "protective sweep" of the residence to search for S.W., Dugan and/or other members of the Old Bridge Police department improperly seized six laptops (three of which belonged to Khourshed's employers and one used by Khourshed's son for school), three iPhones, and one iPad as "evidence". As of the date of this filing, none of these electronic devices has been returned to Plaintiffs.

42.   On October 7, 2021, the State of New Jersey filed a motion for pretrial detention against Khourshed in the Superior Court of New Jersey – Middlesex County.

43.    As a result, Khourshed was incarcerated in Middlesex County

Correctional Facility from October 6, 2021 to October 12, 2021 when he was released on non-monetary conditions, including weekly reporting to probation and travel restrictions (passport surrendered), that still exist as of the date of this filing.

44. Khourshed suffered extreme humiliation, shame, stress and anxiety as a result of being incarcerated that is still ongoing.

45. As a result of being incarcerated, Khourshed lost several contracts and employment opportunities and suffered significant lost wages.

46. As a result of having to surrender his passport, Khourshed was unable to travel in March of 2022 to visit his ailing father and missed his burial and funeral.

47. On October 7, 2023, Dugan and other members of the Old Bridge Police Department again went to the Plaintiffs residence in an attempt to arrest Dr. Alkamary.

48. When Dr. Alkamary was not home, Dugan and Detective Halas then went to Dr. Alkamary's place of employment in Springfield and Neptune, N.J. and discussed the arrest warrant with co-employees, including the office manager, causing Dr. Alkamary significant embarrassment.

49. On October 12, 2023, Dr. Alkamary surrendered to authorities, was

taken into custody, and released the same day on non-monetary conditions, including weekly reporting to probation and travel restrictions (surrendering passport), that still exist as of the date of this filing.

50.     As a result of these false charges, Dr. Alkamary is under active investigation by the New Jersey State Board of Dentistry.  She was forced to spend money on attorney fees for representation in that ongoing proceeding and continues to suffer stress and anxiety due to the uncertainty surrounding whether she will be able to continue her career in the dental field.

51.  After improperly charging Plaintiffs with a laundry list of serious felony crimes based on false allegations to manufacture probable cause, Dugan then falsely testified before the Grand Jury on November 18, 2021.  These misrepresentations include, but are not limited to:

    a.  Dugan falsely indicated that officers were unsuccessful in communicating with Soha and S.W. in April of 2021.

    b. Dugan testified in a manner insinuating that Old Bridge Police was not aware of the fact that S.W. and Soha were living with Plaintiffs prior to discovering personal items on October 6, 2021 when there were numerous police-citizen interactions at Plaintiffs residence dating back to 2017.

c. Dugan testified that it was Plaintiffs who obstructed Waly from obtaining S.W. in April of 2021 when the reason S.W. was not picked up from Plaintiffs' residence was due to Waly not answering his cell phone. Plaintiffs were not even present on this date according to the police reports.

d. Dugan misrepresented the interaction between Plaintiffs and officers on September 9, 2021, stating that Plaintiffs told him "we don't want to cooperate."

52. Based on Dugan's deception of the Grand Jury in his official capacity as a sworn police officer, Plaintiffs were both indicted and charged with two second degree felony crimes, one third degree felony crime, and one fourth degree felony.

53. The Plaintiffs were forced to spent significant money in attorney fees to defend these charges.

54. On March 8, 2023, Hon. Andrea Carter, J.S.C. entered an Order dismissing the indictment as to the two second degree felonies and the fourth degree felony.

55. As of the date of the filing of this complaint, both Plaintiffs have pending charges in Superior Court for third degree hindering in violation of N.J.S.A. 2C:29-3a.

## COUNT I

### KHOURSHED v. DUGAN/FORD/JOHN DOES 1-5
### 42 U.S.C. § 1983 – FALSE ARREST/IMPRISONMENT

56.  Plaintiffs hereby incorporate each and every prior allegation of this Complaint by reference.

57.  The aforementioned acts of Defendants Dugan and Ford and/or John Does 1-5 constitute an arrest of Plaintiff Khourshed without legal or factual justification and without probable cause.

58.  The aforementioned acts amount to a violation of Plaintiff Khourshed's constitutional rights to be free from unreasonable seizure under the Fourth and Fourteenth Amendments of the Constitution of the United States, made actionable through 42 U.S.C. § 1983.

59.  By reason of the above, Plaintiff Khourshed was caused to suffer the following damages:

    a.  Loss of physical liberty due to incarceration and non-monetary pretrial release conditions;

    b.  Being made the target of a filed Complaint and Indictment without the support of probable cause;

    c.  Shame, disgrace, public humiliation, and the fear of additional incarceration;

    d.  Lost wages and employment opportunity;

14

e. Monies spent on attorneys to defend the false charges;

f. Medical expenses and the financial burden of ongoing medical care as a result of emotional trauma and loss of well-being as a result of being arrested, incarcerated and being charged with serious felony crimes.

WHEREFORE, Plaintiff Khourshed demands judgment in his favor and against the defendants, jointly and severally, in an amount to adequately and reasonably compensate him for damages sustained, treble damages, punitive damages, attorney fees and costs pursuant to 42 U.S.C. § 1988 and for such other relief the court deems equitable and just.

**COUNT II**
**DR. ALKAMARY v. DUGAN/FORD/JOHN DOES 1-5**
**42 U.S.C. § 1983 – FALSE ARREST/IMPRISONMENT**

60. Plaintiffs hereby incorporate each and every prior allegation of this Complaint by reference.

61. The aforementioned acts of Defendants Dugan and Ford and/or John Does 1-5 constitute an arrest of Plaintiff Dr. Alkamary without legal or factual justification and without probable cause.

62. The aforementioned acts amount to a violation of Plaintiff Dr. Alkamary's constitutional rights to be free from unreasonable seizure under the Fourth and Fourteenth Amendments of the Constitution of the United States, made actionable through 42 U.S.C. § 1983.

63.     By reason of the above, Plaintiff Dr. Alkamary was caused to suffer the following damages:

   a.   Loss of physical liberty due to being taken into custody and non-monetary pretrial release conditions;

   b.   Being made the target of a filed Complaint and Indictment without the support of probable cause;

   c.   Shame, disgrace, public humiliation, and the fear of incarceration;

   d.   Lost wages and employment opportunity;

   e.   Monies spent on attorneys to defend the false allegations;

   f.   Monies spent on attorneys to defend the ongoing investigation by the New Jersey State Board of Dentistry;

   g.   Medical expenses and the financial burden of ongoing medical care as a result of emotional trauma and loss of well-being as a result of being arrested and being charged with serious felony crimes.

WHEREFORE, Plaintiff Dr. Alkamary demands judgment in her favor and against the defendants, jointly and severally, in an amount to adequately and reasonably compensate her for damages sustained, treble damages, punitive damages, attorney fees and costs pursuant to 42 U.S.C. § 1988 and for such other relief the court deems equitable and just.

16

## COUNT III
## PLAINTIFFS V. DUGAN/FORD/JOHN DOES 1-5
## 42 U.S.C. § 1983 -ABUSE OF PROCESS

64. Plaintiffs hereby incorporate each and every prior allegation of this Complaint by reference.

65. Defendants Dugan, Ford and/or John Does 1-5, after the initial issuance of process against Plaintiffs, used such "process" to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.

66. Defendants Dugan, Ford and/or John Does 1-5, made false statements of fact, conspired to falsify reports and falsely testify before the Grand Jury, maliciously, intentionally, recklessly, and/or negligently misrepresented the facts of their encounters with Plaintiffs; and/or withheld evidence to initiate and/or instigate a criminal prosecution of Plaintiffs.

67. Defendants Dugan, Ford, and/or John Does 1-5 knew that the complaints initiated against Plaintiffs were groundless and then conspired to make false statements in police reports and to the Grand Jury to gain advantage over Plaintiff's constitutional claims, and/or to protect their interest in their employment, and/or to protect themselves from criminal prosecution and civil liability, and/or to retaliate against the Plaintiffs for asserting their Constitutional rights during their investigation.

17

68.   The aforementioned acts amount to a violation of Plaintiffs' constitutional rights to be free from unreasonable seizure under the Fourth and Fourteenth Amendments of the Constitution of the United States, made actionable through 42 U.S.C. § 1983.

69. By reason of the above, the Plaintiffs suffered damages as set forth in Counts I and II.

WHEREFORE, Plaintiffs demand judgment in their  favor and against the defendants, jointly and severally, in an amount to adequately and reasonably compensate their damages sustained, treble damages, punitive damages, attorney fees and costs pursuant to 42 U.S.C. § 1988 and for such other relief the court deems equitable and just.

**COUNT IV**
**PLAINTIFFS v. OLD BRIDGE AND CHIEF FRITZ, JR.**
**42 U.S.C. § 1983 – UNLAWFUL POLICY, CUSTOM, PRACTICE,**
**INADEQUATE TRAINING**

70. Plaintiffs hereby incorporate each and every prior allegation of this Complaint by reference.

71.  Defendants Old Bridge and Chief of Police Fritz, Jr., and/or John Does 6-10 are vested by state law with the authority to make policy on police citizen encounters, measures to discourage and provide consequences for the use of exaggerated and false testimony by police officers, internal affairs investigations, and disciplining officers.

18

72. At all times relevant hereto, Old Bridge developed and maintained policies and customs that encouraged police officers to create false reports and to punish citizens who appropriately assert their Constitutional rights, failed to discipline officers who falsely testified before the Grand Jury, had no adequate oversight to ensure that complaints and warrants were based on truthful allegations and/or that the elements of each offense charged were present, failed to provide effective training, oversight and discipline to officers who falsified reports and testified falsely as a sworn officer before a Grand Jury.

73. As a result, Officer Dugan, Ford and/or John Does 1-5 expected that his lies and false testimony under oath concerning his interactions with Plaintiffs would not result in any adverse consequences and they could inflict these injuries upon innocent citizens with impunity under color of state law.

74. At all times relevant to this action, it was the policy and/or custom of Old Bridge to inadequately and improperly investigate citizen complaints of police misconduct.

75. At all times relevant to this action, it was the policy and/or custom of Old Bridge, as implemented by Chief Fritz, Jr., to inadequately supervise and train police officers, including Dugan, Ford and/or John Does 1-5, thereby failing to discourage false testimony and constitutional violations by its police officers.

19

76.  At all times relevant to this action, Chief Fritz, Jr. did not require appropriate monitoring, in-service training, retraining, or employment discipline of officers.

77.  As a result of the above-described policies and customs, Dugan, Ford and/or John Does 1-5 abused the authority of their office by filing retaliatory and pretextual criminal charges against Plaintiffs and providing false testimony to the Grand Jury since they believed their illegal actions would never be investigated, remedied, or sanctioned, but would instead be tolerated.

78.  The above-described policies and customs demonstrate a deliberate indifference on the part of Chief Fritz, Jr. and other policy makers of Old Bridge to the constitutional rights of persons within the township and were the proximate cause of the violations of Plaintiffs' rights and resulting damages.

WHEREFORE, Plaintiffs demand judgment in their favor and against the defendants, jointly and severally, in an amount to adequately and reasonably compensate their damages sustained, treble damages, punitive damages, attorney fees and costs pursuant to 42 U.S.C. § 1988 and for such other relief the court deems equitable and just.

## COUNT V
## PLAINTIFFS v. DEFENDANTS
## VIOLATIONS OF THE NEW JERSEY CIVIL RIGHTS ACT

79.     Plaintiffs hereby incorporate each and every prior allegation of this Complaint by reference.

80.     The acts of the Defendants violated Plaintiffs' rights under the New Jersey Civil Rights Act and the New Jersey Constitution, in that Plaintiffs were deprived of the following fundamental rights:

a.      The right to safety and happiness.  (N.J. Const. Art I (1);

b.      The right to responsible Government action, which "is instituted for the protection, security, and benefit of the people."

c.      The right to be free from unreasonable arrest and seizure.

81.     By reason of the above, the Plaintiffs suffered damages as set forth in Counts I and II.

WHEREFORE, Plaintiffs demand judgment in their favor and against the defendants, jointly and severally, in an amount to adequately and reasonably compensate their damages sustained, treble damages, punitive damages, attorney fees and costs, and for such other relief the court deems equitable and just.

## JURY DEMAND AND DESIGNATION OF TRIAL COUNSEL

82. Plaintiffs demand a trial by jury on all issues so triable.

83. Plaintiffs designate Michael J. Fioretti, Esq. as trial counsel in this

matter.

## CERTIFICATION

Plaintiffs hereby certify that there are no other actions regarding the matter

alleged in this complaint are related to any other existing cased or controversy nor

is any related action contemplated at this time.

Respectfully submitted,

LAW OFFICES OF MICHAEL J.

FIORETTI

By:   _s/ Michael J. Fioretti (mf5014)__
MICHAEL J. FIORETTI
1415 Route 70 East, Suite 105
Cherry Hill, NJ  08034
(856) 644-1848
Fax:  (856) 434-4166

Counsel for Plaintiffs

Dated:  October 6, 2023